UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

ALDRICK L. WOODRUFF,

Petitioner,

v.

MN CORRECTIONAL FACILITY-OPH,

Respondent.

Civil No. 01-142 (DSD/SRN)

REPORT AND RECOMMENDATION

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254. These proceedings have been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it is recommended that the petition be dismissed with prejudice pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.[1]

## I. BACKGROUND

On December 2, 1993, Petitioner was convicted in the state district court for Hennepin County, Minnesota, on a charge of first degree murder. He was sentenced to life in prison, and he is presently serving his sentence at the Minnesota Correctional Facility in Oak Park Heights, Minnesota.

[1] The applicable language in Rule 4 provides as follows:

"If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

FILED MAR 13 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

Following his conviction, Petitioner filed a direct appeal with the Minnesota Supreme Court.[2] Before that appeal was decided, however, Petitioner filed a "motion for stay of appeal... for investigation and ballistic testing on new evidence." ("Affidavit [re:] Aldrick Woodruff v. State of Minnesota – Procedural History," [Docket No. 10], ¶ 6.[3]) According to Petitioner, the Minnesota Supreme Court thereafter ordered a "remand" of his case. (Procedural History, ¶ 7.) Petitioner further represents that between January 1995 and April 1996, there was an "[i]nvestigation and expert testing of firearms." (Procedural History, ¶ 9.) He also claims that on May 31, 1996, the Minnesota Supreme Court denied his "motion to reinstate [his] appeal." (Procedural History, ¶ 10.[4])

Between June 1996 and November 1998, there was an "investigation of new evidence and witnesses." (Procedural History, ¶ 11.) On March 24, 1999, Petitioner filed a post-conviction motion in the Hennepin County trial court, challenging his conviction and

---

[2] Under Minnesota law, appeals in first degree murder cases are taken directly to the State Supreme Court, rather than the Minnesota Court of Appeals. Minn.Stat. § 632.14.

[3] Petitioner's habeas corpus petition, (Docket No. 1), was not submitted on the proper form, and did not fully explain the procedural history of his criminal case. Therefore, by order dated January 30, 2001, (Docket No. 2), the Court directed Petitioner to file an Amended Petition and to supplement his new petition with a complete chronology of the legal proceedings that followed his conviction. In response to that order, Petitioner filed an Amended Petition, (Docket No. 8), a two-page memorandum entitled "Petitioner's Memorandum," (Docket No. 9), and a one-page chronology of events relevant to his case, entitled "Affidavit [re:] Aldrick Woodruff v. State of Minnesota -- Procedural History," (Docket No. 10). The Court's understanding of the post-judgment proceedings in Petitioner's case is based largely on the last of those documents, referred to herein as "Procedural History."

[4] According to the Supreme Court, "Petitioner did not exercise his right to a direct appeal but instead petitioned for postconviction relief." Woodruff v. State, 608 N.W.2d 881, 884 (Minn. 2000).

sentence. (Procedural History, ¶ 12.) The trial court denied Petitioner's post-conviction motion on May 3, 1999, and Petitioner thereafter appealed that ruling to the Minnesota Supreme Court. (Procedural History, ¶s 15 and 16.) On April 13, 2000, the State Supreme Court affirmed the trial court's denial of the post-conviction motion, and upheld Petitioner's conviction and sentence. Woodruff v. State, 608 N.W.2d 881 (Minn. 2000).

Petitioner's present habeas corpus action was commenced on January 25, 2001. His Amended Petition, (Docket No. 8), lists five grounds for relief: (1) the trial court erroneously excluded certain evidence that purportedly would have aided Petitioner's defense; (2) Petitioner was denied due process by reason of a "biased and unfair investigation by the police department;" (3) there was insufficient evidence to support the jury's verdict; (4) the trial court erroneously excluded certain evidence that Petitioner sought to introduce in support of his post-conviction motion; and (5) the prosecutor made remarks during closing argument which constituted prosecutorial misconduct. (Amended Petition, pp. (5)-(6), ¶ 12.) None of these claims will be addressed on the merits, however, because the Court finds that this action was not brought within the time limit prescribed by 28 U.S.C. § 2244(d). Instead, it will be recommended that the action be summarily dismissed with prejudice, because it is time-barred.

## II. DISCUSSION

On April 24, 1996, President Clinton signed the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), which effected significant changes in the federal habeas corpus statutes. One of those changes appears at 28 U.S.C. § 2244(d), which establishes a one-year statute of limitations for habeas corpus petitions filed by state prisoners seeking

federal court review of a conviction or sentence. This new statute provides that:

> "**(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(d)(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

In this case, the date when the statute of limitations began to run is not readily apparent. The earliest the statute could have begun to run was April 24, 1996 – the date when the statute was enacted. Nichols v. Bowersox, 172 F.3d 1068, 1073 (8th Cir. 1999); Ford v. Bowersox, 178 F.3d 522, 523 (8th Cir. 1999). According to Petitioner's Procedural History, however, he was searching for new evidence between June 1996 and November 1998. This suggests that the date when the statute of limitations began to run could have been affected by § 2244(d)(1)(D), which delays the starting date to "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

While it seems highly doubtful that § 2244(d)(1)(D) is properly applicable here, the Court will assume, for present purposes only, that (1) Petitioner did discover some new evidence between June 1996 and November 1998, (2) the new evidence that he discovered could not have been discovered any earlier, even with "the exercise of due diligence," and (3) at least some of Petitioner's current claims are based directly on some newly-discovered evidence.[5] With the benefit of that assumption, the statute of limitations may have begun to run in this case as late as December 1, 1998 – the day after Petitioner's last "investigation of new evidence and witnesses" was completed. (Procedural History, ¶ 11.)

If it is assumed that the statute of limitations did not begin to run until December 1, 1998, then the statute had run for only 113 days when it was tolled (pursuant to § 2244(d)(2)) by the filing of Petitioner's state post-conviction motion on March 24, 1999.[6]

---

[5] It should be noted that the Court is giving Petitioner's submissions an extremely generous construction. In truth, Petitioner has not shown that any of his current claims for relief are based on new evidence that could not have been discovered before the end of his "investigation" session of June 1996 to November 1998.

[6] Petitioner might believe that a post-conviction motion does more than just temporarily stop the statute of limitations from running while the post-conviction proceedings are pending. He may think that filing a post-conviction motion actually 'resets the clock,' so that a prisoner gets a fresh new one-year limitation period that does not begin until the state post-conviction proceedings are completed. That, however, is simply not the case. As explained in Sorce v. Artuz, 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999):

> "The tolling provision of AEDPA does not allow the one year period to run anew each time a post-conviction motion is ruled upon. Instead, the toll excludes from the calculation of the one year period any time during which post-conviction relief is pending. [Citation omitted.] Thus, the provision stops, but does not reset, the clock from ticking on the time in which to file a habeas petition. It cannot revive a time period that has already expired." (Emphasis added.) **[Continued....]**

The statute of limitations then remained tolled until April 13, 2000, when the Minnesota Supreme Court ended Petitioner's post-conviction proceedings by handing down its decision upholding his conviction. See Mills v. Norris, 187 F.3d 881, 883-84 (8th Cir. 1999) (statute remains tolled during the entire period of time that post-conviction proceedings are pending in any of the state courts, including state appellate courts). As of April 14, 2000, there was no longer a post-conviction motion pending in the state courts, so the statute of limitations began to run again on that date.[7] The statute then continued to run for another 276 days, before stopping again on January 16, 2001 – the date when Petitioner's original habeas petition is deemed to have been filed.[8]

---

See also Lucidore v. New York State Div. of Parole, No. 99 CIV 2936 AJP, (S.D.N.Y. 1999), 1999 WL 566362 at *4 ("Section 2244(d) does not state that the AEDPA's one-year statute begins to run anew after decision on a state collateral attack; such an interpretation would allow an inmate to avoid the effect of the AEDPA's one-year [statute] of limitations by bringing a belated state collateral attack"), aff'd 209 F.3d 107 (2nd Cir.), cert. denied, 121 S.Ct. 175 (2000); Broom v. Garvin, 99 Civ. 1083 (JSM) (S.D.N.Y. Apr. 26, 1999), 1999 WL 246753 at *1 ("the filing of a collateral attack in the state court tolls the AEDPA statute of limitations during the period that it is pending, but it does not commence a new limitations period").

[7] The statute of limitations was not tolled during the 90-day period following the State Supreme Court's final decision in the post-conviction proceedings, when Petitioner could have applied for a writ of certiorari from the U.S. Supreme Court. Snow v. Ault, 238 F.3d 1033, 1035-36 (8th Cir. 2001).

[8] Although Petitioner's original habeas petition was not actually received by the Clerk of Court until January 25, 2001, the Court will give Petitioner the benefit of the "prison mail-box rule." See Nichols v. Bowersox, 172 F.3d 1068, 1077 (8th Cir. 1999) ("a pro se prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court"). Petitioner executed his original petition on January 16, 2001, so that obviously is the earliest date when he could have given it to prison officials for mailing. While it seems likely that Petitioner did not actually attempt to mail his petition until sometime later, the Court will give him the benefit of the doubt and assume that he tried to file his petition on the same date that he signed it. Therefore, for purposes of § 2244(d), the present petition is deemed to have been filed --

Thus, even with the benefit of the most generous possible application of § 2244(d)(1), the Court finds that the statute of limitations ran in this case for a total of at least 389 days – 113 days between December 1, 1998, and March 24, 1999, plus 276 days between April 14, 2000, and January 16, 2001. Because the applicable limitations period is only 365 days (one year), and the statute ran in this case for at least 389 days, the Court concludes that the present action was commenced at least 24 days too late.

## III. CONCLUSION

For the reasons discussed above, the Court finds that Petitioner's present habeas corpus action is time-barred pursuant to 28 U.S.C. § 2244(d). It will therefore be recommended that this action be summarily dismissed pursuant to Rule 4. Moreover, because Petitioner is now statutorily ineligible for federal habeas corpus relief, it is further recommended that the action be dismissed with prejudice.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Amended Habeas Corpus Petition, (Docket No. 8), be DENIED; and
2. This action be DISMISSED WITH PREJUDICE.

Dated: March 12, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

---

and the statute of limitations finally stopped running in this case – on January 16, 2001.

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.